# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THE FREDERICK QUINN CORPORATION, | ) ) | |
| Plaintiff, | ) ) | Case No. 14 C 3850 |
| v. | ) ) | Judge Joan B. Gottschall |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this action to recover on a performance bond, defendant West Bend Mutual Insurance Company contends that plaintiff Frederick Quinn Corporation's allegations about the amount in controversy, 28 U.S.C. § 1332(a), are insufficient. West Bend thus seeks to dismiss Frederick Quinn's complaint pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons detailed below, Frederick Quinn will be required to file an amended complaint consistent with this opinion. In light of the anticipated amended complaint, West Bend's motion to dismiss is denied as moot.

### I. BACKGROUND

Plaintiff Frederick Quinn Corporation is a general contractor that also performs construction management. Defendant West Bend Mutual Insurance Company is in the business of providing payment and performance bonds for construction contractors. Frederick Quinn and Optimal Fire Protection, LLC entered into a subcontract that required Optimal to install a fire protection system as part of a larger project. West Bend issued a performance bond to Frederick Quinn for the Frederick Quinn–Optimal subcontract.

In its single-count federal complaint seeking to recover on West Bend's performance bond, Frederick Quinn alleges that Optimal failed to perform, forcing Frederick Quinn to engage

two other subcontractors (Automatic Fire Systems and C.L. Doucette) to complete Optimal's work.  In addition, Frederick Quinn filed a state court action in the Circuit Court of DuPage County against Optimal based on Optimal's failure to perform.  *See West Bend Mut. Ins. v. Optimal Fire Prot. LLC*, 14-AR-270 (Cir. Ct. DuPage Cnty.).

A.  **Damages Claimed in Frederick Quinn's Complaint**

In its complaint, Frederick Quinn claims damages in the amount of $77,872.37.  (Compl. ¶ 29, Dkt. 1.)  Frederick Quinn calculates that amount as follows.  The price of the subcontract between Frederick Quinn and Optimal was $136,000.  Frederick Quinn paid Optimal $80,820.00, leaving $55,180.00 of the subcontract cost unpaid.  (*Id.* at ¶¶ 25-26.)  Frederick Quinn asserts that it spent a total of $133,052.37 (including its legal fees) to complete the work that Optimal failed to do.  (*Id.* at ¶ 28.)  Frederick Quinn arrives at its claimed amount of $77,872.37 in damages by applying a credit of $55,180.00 to $133,052.37.  (*Id.* at ¶ 29.)  It then concludes that West Bend, as the surety for the subcontract with Optimal, is liable for $77,872.37.

B.  **West Bend's Initial Challenge to the Damages Claimed in Frederick Quinn's Complaint**

According to West Bend, during the course of discovery in the state court proceedings between Frederick Quinn and Optimal, Optimal asked Frederick Quinn to produce "[a]ll Documents showing what amounts are due and owing to Optimal for the services it provided in connection with the project."  (Dkt. 21, Ex. A at request 9.)  In response, Frederick Quinn produced an affidavit from Scott Metzel (Frederick Quinn's Chief Financial Officer) supporting Frederick Quinn's claim that it previously paid $80,820.00 to Optimal, as well as eight change orders showing that the total cost to complete the Optimal contract was $113,747.00.  West Bend

correctly observes that $113,747.00 minus the $55,180.00 credit is $58,667.00, which is less than the minimum amount in controversy of $75,000. *See* 28 U.S.C. § 1332(a). West Bend's motion to dismiss for lack of subject matter jurisdiction is based on this calculation of damages.

**C.     Damages Claimed in Frederick Quinn's Response to the Motion to Dismiss**

In response to West Bend's motion to dismiss, Frederick Quinn asserts that there were, in fact, ten change orders (not eight). It attaches the two additional change orders (in the amount of $7,200 and $11,155.00, respectively) to its response to the motion to dismiss, denies that it ever represented that the eight change orders reflected all of its damages, and represents that the last two change orders "inadvertently were not included in [its] initial production." (Pl. Resp. at 3, Dkt. 24.)

Change Order Nine is dated July 26, 2013 and Change Order Ten is dated May 12, 2014. (Dkt. 24-1, PageID #757-58.) Change Orders Nine and Ten both include "backcharge[s] for [Frederick Quinn] Project Management expense." Specifically, Change Order Nine reflects charges in the amount of $7,200.00 for weekend and overtime painting work. Change Order Ten reflects charges in the amount of $3,555.00 for legal and administrative expenses and $4,100.00 for Frederick Quinn "management expenses." Change Order Ten also includes a $3,5000 charge for "Interest Income lost due to fire protection work completion costs / expense . . . (Approx. $70,000.00 at 5% / 16 months)." (*Id*.)

In its response to West Bend's motion to dismiss, Frederick Quinn abandons its allegation in its complaint that West Bend, as a surety for the subcontract with Optimal, is liable for $77,872.37. Instead,, it claims that its damages in fact totaled "approximately $82,853." (*Id*.) The difference in the two figures is due to an additional $5,931 in legal fees claimed in the

Metzler affidavit (which is attached to Frederick Quinn's response to the motion to dismiss).[1]
These legal fees cover the time period beginning May 13, 2014, and ending May 23, 2014, that are documented in the last line of the summary chart for change orders as follows:

| Exhibit | Change Order No. | Date | Amount |
|---|---|---|---|
| 1-A | 446-13-1 | 1/28/2013 | $11,287 |
| 1-B | 446-13-2 | 1/28/2013 | $33,880 |
| 1-C | 446-13-3 | 1/28/2013 | $28,266 |
| 1-D | 446-13-4 | 1/28/2013 | $13,341 |
| 1-E | 446-13-5 | 1/30/2013 | $9,398 |
| 1-F | 446-13-6 | 1/30/2013 | $12,343 |
| 1-G | 446-13-7 | 3/30/2013 | $4,515 |
| 1-H | 446-13-8 | 7/26/2013 | $717 |
| 1-I | 446-13-9 | 7/26/2013 | $7,200 |
| 1-J | 446-13-10 | 5/12/2014 | $11,155 |
|  | Additional Legal Fees | 5/13 - 5/23/2014 | $5,931 |
|  |  | TOTAL: | $138,033 |

(Dkt. 24-1, PageID #759.)

## II. LEGAL STANDARD

If a defendant denies or controverts the truth of a plaintiff's jurisdictional allegations and files a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may look beyond the pleadings and view any evidence submitted by the parties to determine if subject matter jurisdiction is proper. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444

---

[1] This is confusing because presumably Frederick Quinn also seeks to add the additional amounts in Change Orders Nine and Ten to its total claimed damages. These Change Orders are listed in the summary chart in the two lines immediately above the May 2014 additional legal fees. The $138.033 in total damages claimed in the summary chart (which includes Change Orders Nine and Ten and the May 2014 additional legal fees) minus the $55,180.00 credit equals $82,853. Thus the new claimed damages of $82,853 appears to include Change Orders Nine and Ten, despite Frederick Quinn's muddled presentation of its claimed damages.

-4-

(7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

In determining whether a plaintiff has satisfied the amount in controversy requirement, the court must engage in "an evaluation of the controversy described in the plaintiff's complaint and the record as a whole, as of the time the case was filed." *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002). In the context of a challenge to "the plaintiff's allegation of the amount in controversy, the plaintiff must support its assertion with competent proof." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (internal quotation marks and citations omitted). To satisfy this burden, the plaintiff "must prove . . . those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (stating that "'[r]easonable probability that jurisdiction exists,' a phrase with no provenance and no following outside this circuit, is banished from our lexicon"); *Blomberg v. Service Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) ("If the party opposing federal jurisdiction contests the amount in controversy, the proponent must prove those jurisdictional facts by a preponderance of the evidence") (internal quotations omitted); *McMillian*, 567 F.3d at 845 (to satisfy the amount in controversy requirement, the plaintiff "must come forward with competent proof that [it has] satisfied the jurisdictional threshold and not simply point to the theoretical possibility of recovery for certain categories of damages"). "Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Meridian*, 441 F.3d at 543.

### III. DISCUSSION

Frederick Quinn's attempt to increase the amount of its claimed damages in its response to West Bend's motion to dismiss is improper. *See*, *e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (the "rule that a plaintiff may not amend his complaint in his response brief" is "axiomatic"). Nevertheless, the parties have exhaustively briefed the amount in controversy issue in the context of the figures provided in Frederick Quinn's response to the motion to dismiss. Thus, to conserve the parties' resources, the court will consider the parties' briefs and the higher total amount of claimed damages in Frederick Quinn's response to the motion to dismiss.

In its filings, West Bend criticizes large portions of the damages reflected in all ten change orders as well as the recently added May 2014 claim for attorneys' fees. The court begins by considering West Bend's challenges to the $3,500 in interest claimed in Change Order Ten, the $5,931 in May 2014 attorneys' fees, and an additional $1,783.80 in fees claimed in Change Order 6 which are billed to "Frederick Quinn Corporation – General Matters" instead of the "Optimal Fire Protection" matter. If at least $7,853.01 of these claimed damages are improper ($82,853.00 minus $7,853.01 is $74,999.99, which puts Frederick Quinn under the $75,000 jurisdictional threshold), the amount in controversy requirement cannot have been satisfied as of the time Frederick Quinn filed its federal lawsuit.

### A. Interest

"Under 28 U.S.C. § 1332, federal courts have jurisdiction over civil suits between citizens of different states 'where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542 (7th

Cir. 2008) (quoting 28 U.S.C. § 1332). Although the court allowed Frederick Quinn to file a sur-reply in support of its claimed damages, Frederick Quinn does not provide any support for including interest in the amount in controversy (indeed, it does not even mention its claim that interest counts towards the amount in controversy). The court will subtract $3,500 in interest from Frederick Quinn's claimed damages of $82,853.00, resulting in a running total of $79,353.00.

**B.      Attorneys' Fees**

The parties' contract allows Frederick Quinn to recover attorneys' fees. (Dkt. 1-1, PageID #75 at § 9.3.5.) West Bend challenges the additional $5,931 in legal fees claimed in the Metzler affidavit for the time period beginning May 13, 2014, and ending May 23, 2014. The $5,931 is part of Frederick Quinn's overall claim for a total of $18,679 in attorneys' fees. Frederick Quinn does not provide any details regarding the May 2014 fees. Its submission regarding those fees provides, in full, "Additional Legal Fees 5/13 - 5/23/2014 $5,931." (Dkt. 24-1, PageID #759.) West Bend also challenges $1,783.80 in fees claimed in Change Order 6 which are billed to "Frederick Quinn Corporation – General Matters" instead of the "Optimal Fire Protection" matter.

Because the parties' contract contains a fee-shifting provision, attorneys' fees incurred prior to the filing of this case count towards the amount in controversy. *See Carolina Cas. Ins. Co. v. Merge Healthcare Solutions Inc.*, 728 F.3d 615, 617 (7th Cir. 2013) ("fees for time spent after a suit begins do not count toward the amount in controversy required for suits under the diversity jurisdiction") (citing *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998)). Conclusory assumptions about billing rates and the number of hours worked do not rise

to the level of "competent proof" regarding the amount in controversy. *Stratton v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 11 C 8011, 2012 WL 1533456, at *2-3 (N.D. Ill. Apr. 25, 2012); *see also Am. Econ. Ins. Co. v. T.J. Copy Prods., Inc.*, No. 04 C 107, 2004 WL 842510, at *2-3 (N.D. Ill. Apr. 20, 2004) (holding that "the assertions as to the amount of attorneys' fees potentially at issue in the underlying action are vague generalizations which are not supported by any specific facts . . . this type of conclusory assertion is not competent proof that the amount in controversy exceeds $75,000").

Frederick Quinn, however, has not made a conclusory claim of entitlement to attorneys' fees as it has claimed specific dollar amounts. Instead, the issue is that the allegations about the fees sought in Change Order 10 do not allow the court to ascertain what work was done by whom at what rate and the fees sought in Change Order 6 are billed to Frederick Quinn's general account instead of the Optimal matter, making it impossible to determine if the work was related to the Optimal breach. Frederick Quinn defends its requested fees by citing to the standard for Fed. R. Civ. P. 12(b)(b) motions to dismiss in *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007), and then concluding – based on Fed. R. Civ. P. 8(a)(1) – that it has provided a "short and plain statement" of a claim showing that it is entitled to relief. This amalgamation of inapposite rules is unhelpful given the court's obligation to determine if "competent proof" supports the claimed amount in controversy. *See McMillian*, 567 F.3d at 844.

"In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012). The Seventh Circuit directs courts to consider whether claimed attorneys' fees are "plausible" and "reasonable" when assessing whether a plaintiff has carried its burden of proof regarding the

amount in controversy. *ABM Sec. Serv., Inc. v. Davis*, 646 F.3d 475, 478-79 (7th Cir. 2011); *see also Engebretson v. Sun Life Assur. Co. of Canada*, No. 4:09-CV-26-SEB-WGH, 2009 WL 1748225, *4 (S.D. Ind. June 17, 2009) (denying motion to remand based on the amount in controversy where "the amount of . . . attorneys' fees to date, while not specified, could easily push the amount in controversy past the jurisdictional limit"); *Wethington v. State Farm Mut. Auto. Ins. Co.*, No. IP001262CTG, 2000 WL 1911886, at *7 (S.D. Ind. Dec. 8, 2000) ("a mere possibility" that the plaintiffs will be able to recover attorneys' fees "is too speculative to satisfy the reasonable probability standard" and thus does not meet the competent proof standard).

Here, determining if Frederick Quinn has carried its burden is like trying to count the number of angels dancing on the head of a pin. Given the lack of detail or explanation, there is simply no way to assess whether the charges billed to Frederick Quinn's general account in fact related to the Optimal default or if the claimed May 2014 fees are plausible and reasonable.

"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653; *Newman-Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 831 (1989) (section 1653 addresses "incorrect statements about jurisdiction that actually exists"). The court finds that the interests of justice support the filing of an amended complaint. Frederick Quinn need not provide the level of detail necessary for a fee petition but given West Bend's challenge to the amount in controversy, it must do more than it has done. Accordingly, Frederick Quinn is granted leave to file an amended complaint that reflects its current claimed damages (as opposed to the lower amount in the current complaint). It may provide whatever details it deems necessary to rise to the level of competent proof that the amount in controversy exceeds $75,000. Any amended complaint should also break out the various elements of

damages (*e.g.*, the Change Orders) in an understandable way.  Given the issues with the claimed attorneys' fees and the need to amend the complaint, the court will not address the remaining alleged deficiencies with Frederick Quinn's claimed damages.

## IV.  CONCLUSION

Consistent with this opinion and counsels' Rule 11 obligations, Frederick Quinn is granted leave to file an amended complaint by June 1, 2015.  West Bend shall answer or otherwise plead by June 22, 2015.  If no amended complaint is filed, this action will be dismissed for lack of jurisdiction.  In light of the anticipated amended complaint, West Bend's motion to dismiss pursuant to Rule 12(b)(1) based on the amount in controversy [21] is denied as moot.

Date:  May 8, 2015                                                /s/
                                                        Joan B. Gottschall
                                                        United States District Judge